## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

ADAM LANE                                              PLAINTIFF
ADC #155843

V.                        No. 2:20-CV-148-DPM-JTR

GAYLON LAY, Warden, EARU;
EMMER BRANCH, Warden, EARU;
JAMES NEELY, Chaplain, EARU; and
ARLEN PARHAM, Chaplain, EARU                           DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United
States District Judge D.P. Marshall Jr. You may file written objections to all or part
of this Recommendation. If you do so, those objections must: (1) specifically explain
the factual and/or legal basis for your objection; and (2) be received by the Clerk of
this Court within fourteen (14) days of the date of this Recommendation. If you do
not file objections, Judge Marshall may adopt this Recommendation without
independently reviewing all of the evidence in the record. By not objecting, you may
waive the right to appeal questions of fact.

### I.   Introduction

Plaintiff Adam Lane ("Lane"), a prisoner in the East Arkansas Regional Unit
("EARU") of the Arkansas Division of Correction ("ADC"), filed this § 1983 action
alleging that Defendants Warden Gaylon Lay ("Warden Lay"), Warden Emmer

Branch ("Warden Branch"), Chaplain James Neely ("Chaplain Neely"), and Chaplain Arlen Parham ("Chaplain Parham") violated his constitutional rights by not allowing him to participate in the required fast for Ramadan. *Doc. 2*. After screening the Complaint, Lane was allowed to proceed with: (1) a First Amendment free exercise claim; (2) an Eighth Amendment claim based on an allegedly inadequate diet; and (3) a Fourteenth Amendment claim based on Lane's allegations that he was "treated difference th[a]n others similarly situated." *Doc. 2 at 6; Doc. 5; Doc. 6*.

On April 19, 2022, Defendants filed a Motion for Summary Judgment (*Doc. 38*), a Statement of Undisputed Material Facts ("SUMF") (*Doc. 40*), and Brief in Support (*Doc. 39*) arguing that Lane's claims fail, as a matter of law. In support of their Motion, Defendants have attached: (1) the sworn Declaration of the ADC's Administrator of Chaplaincy Services, Joshua Mayfield ("Administrator Mayfield") (*Doc. 38-1*); (2) Lane's Inmate Request Forms, dated February 24, 2020 and April 29, 2020 (*Doc. 38-2; Doc. 38-5*); (3) Lane's Religious Affiliation Update Form, dated April 30, 2020 (*Doc. 38-3*); (4) the ADC's Policy and Procedure regarding Muslim Religious Services (*Doc. 38-4*); (5) Lane's medical records from April and May 2020 (*Doc. 38-6*); and (6) excepts from Lane's deposition (*Doc. 38-7*).

On April 20, 2022, I entered an Order advising Lane of his right to file a Response to Defendants' Motion for Summary Judgment, along with a "short and

concise statement of material facts as to which he contends a genuine dispute exists to be tried." *Doc. 59.* Lane elected not to file any responsive papers, and the time to do so has passed. Accordingly, all facts alleged in Defendants' Statement of Undisputed Material Facts should now be deemed undisputed pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure and Local Rule 56.1(c).

For the reasons explained below, the Court recommends that Defendants' Motion for Summary Judgment be granted.[1]

## II.  Undisputed Material Facts

The relevant undisputed facts are set forth below: [2]

### A. ADC's Ramadan Policies and Procedures

1.       During the ninth month of the Islamic lunar calendar, Muslims observe the holy month of Ramadan by fasting during daylight hours.[3] *SUMF, Doc. 40 at ¶ 11*; *see also Brown-El v. Harris*, 26 F.3d 68, 69 (8th Cir. 1994).

---

[1]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[2] The sources for these facts are Defendants' Statement of Undisputed Material Facts, attachments to Defendant's Motion for Summary Judgment, and Lane's Complaint which he signed under penalty of perjury, making it is "the equivalent of an affidavit for purposes of summary judgment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001).

[3] Under the Christian calendar, Ramadan in 2020 began at sundown on April 23 and continued through May 23. *Mayfield Aff., Doc. 38-1 at 3, ¶ 22.*

2.     To accommodate its Muslim inmates' sincerely held religious beliefs, the ADC deviates from its usual meal schedule during Ramadan to provide fasting inmates two meal trays after sunset. *ADC Policy and Procedure 550, Doc. 38-4; Mayfield Aff., Doc. 38-1*; *SUMF, Doc. 40 at ¶ 14*. Inmates not participating in Ramadan are provided meals three times a day at the regularly scheduled times. *SUMF, Doc. 40 at ¶¶ 14, 27, 42*.

3.     To receive the meal accommodations during Ramadan, inmates must be listed on their ADC units' official list of Ramadan participants. *SUMF, Doc. 40 at ¶ 15*.

4.     To get their name placed on this list, a prisoner must, *prior to the start of Ramadan*:

> (a) inform the ADC that he is Muslim by filling out a Religious Affiliation Update Form and submitting it to the ADC's chaplaincy office; and
>
> (b) sign-up to participate in Ramadan with the chaplaincy office.

*SUMF, Doc. 40 at ¶¶ 6, 15, 16, 18*.

5.     After submitting a Religious Affiliation Update Form, an inmate's chosen religion is recorded in the ADC's official eOMIS database.[4]

---

[4] "eOMIS is an acronym for the Electronic Offender Management Information System, a corrections software system used by the ADC." *Dykes v. Corizon LLC*, No. 2:14-CV-107-BSM-PSH, 2016 WL 3039634, at *3 (E.D. Ark. Apr. 15, 2016).

6.     Before Ramadan begins, the ADC chaplaincy office reviews the list of Ramadan participants and removes the name of any inmate whose listed religious affiliation is not Muslim in the eOMIS database. *Mayfield Aff., Doc. 38-1 at 4, ¶ 32*.

7.     Inmates whose names do not appear on a unit's Ramadan list are not allowed to receive the nighttime meal accommodations. *SUMF, Doc. 40 at ¶¶ 22, 24; Mayfield Aff., Doc. 38-1 at 5, ¶ 35*.

8.     These policies and procedures are intended to "protect[] the sanctity of Ramadan for Muslim inmates." *Mayfield Aff., Doc. 38-1 at 5, ¶ 36*. Specifically, Administrator Mayfield states that it is the ADC's policy to allow only Muslims to participate in Ramadan because it provides inmates "the opportunity to worship without conflict." *Id. at ¶ 11*. He notes that, in the past, allowing unaffiliated inmates to participate in other denominations' religious services has led to "inmates becoming offended" and "arguments and conflict among the inmates." *Id. at ¶ 13*

9.     The ADC's Ramadan policies and procedures also help "maintain[] security and control of the barracks during the administration of Ramadan." *Mayfield Aff., Doc. 38-1 at 5, ¶ 36*. For example, Administrator Mayfield points out that, after sundown, inmates participating in Ramadan must be moved to the area where they receive their evening meals. This can create serious safety and security issues if inmates who are on each other's enemy alert lists are moved together. To avoid those issues, the ADC staff must be able to rely on the official Ramadan participants list

to know *exactly* which inmates can be safely moved together for the evening meals. *Mayfield Aff., Doc. 38-1 at 5, ¶¶ 34, 37*.

### B. Lane's 2020 Attempt to Participate in Ramadan

10.    Ramadan began at sundown on April 23, 2020. *Mayfield Aff., Doc. 38-1 at 3, ¶ 22*. The first day of fasting began at dawn on April 24. *Doc. 2 at 14*.

11.    On February 24, 2020, two months before Ramadan began, Lane sent an Inmate Request Form to the chaplaincy office stating that he had sign up to participate in Ramadan, but his name was not listed on the official Ramadan participants list. *Doc. 38-2*.

12.    In an undated written response, Chaplain Neely informed Lane that he was listed as Buddhist in eOMIS and Ramadan evening meals were only provided to "Islamic/Muslim/Rastafarian inmates." *Doc. 38-2*. Chaplain Neely also noted that, if Lane changed his religious affiliation to "Islamic/Muslim/Rastafarian" after the Ramadan fast began, his name would *not* be added to the Ramadan list. *Id.*

13.    On April 9, 2020, Lane submitted another Inmate Request Form asking the chaplaincy office for the date Ramadan started. *Doc. 2 at 14*. He also wanted to "make sure" he was on the Ramadan list. *Id.*

14.    In an undated written response, Chaplain Neely advised Lane that the "actual fast" begins on April 24, 2020. *Doc. 2 at 14*. He did not respond to Lane's request to "make sure" he was on the Ramadan list.[5] *Id.*

15.    When the first day of Ramadan fasting began on April 24, Lane was still listed as a Buddhist in the ADC's eMOIS database. *SUMF*, *Doc. 40 at ¶ 9*. Accordingly, he was *not* included on the official list of Ramadan participants. *SUMF, Doc. 40 at ¶ 41.*

16.    Even so, Lane began fasting and, for the first five days of Ramadan, he received the evening meal accommodation. *SUMF, Doc. 40 at ¶ 39.*

17.    On April 29, after a full day of fasting, Lane did not receive an evening meal. *V. Compl., Doc. 2 at 5*. Lane immediately filed: (1) an Emergency Grievance alleging that he is a "Hebrew Israelite Muslim who practices peace [and] participates in Ramadan fast" (*Doc. 2 at 12*); and (2) an Inmate Request Form stating that he is "a Muslim who observes Ramadan" (*Doc. 38-5*). In both documents, he complained that he was wrongly taken off the Ramadan participants list and requested to be allowed to continue participating in the fast.

18.    Chaplain Neely responded, and, for the second time, told Lane that "eOMIS has you listed as Buddhist." Chaplain Neely also told Lane his "name never

---

[5] Chaplain Neely likely did not respond to this request because Lane had not provided the chaplaincy office with notice that he had changed his listed religious affiliation from Buddhist to "Islamic/Muslim/Rastafarian."

was on the list—if it got added then it was an inmate who penciled you in."[6] *Doc. 38-5*.

19.    On April 30, Lane filed a second Emergency Grievance (*Doc. 2 at 9*) and submitted a Religious Affiliation Update Form stating that he was changing his religious affiliation from Buddhist to "Hebrew Israelite Muslim" (*Doc. 38-3*).

20.    Thereafter, on unspecified dates, Lane spoke with Defendants Warden Lay, Warden Branch, Chaplain Parham, and Chaplain Neely about not receiving Ramadan accommodations. According to Lane, the Defendants gave him the "run around" and he did not receive any resolution to his complaints. *V. Compl., Doc. 2 at 5–6*. He continued to be denied evening meals until Ramadan ended on May 23, 2020. *Doc. 2 at 6; Doc. 38-1 at 3, ¶ 22*.

21.    Lane states that he fasted a total of twenty-four days without receiving the evening meal accommodations. *V. Compl., Doc. 2 at 6*. During that time, he visited the infirmary at least six times. *Lane Medical Records, Doc. 38-6*. He complained of various ailments, including migraines, dandruff, back pain, enlarged lymph nodes, and a tooth ache. *Id.* However, the medical notes documenting these six infirmary visits do not contain a single mention of him complaining of hunger

---

[6] The information conveyed in this response is essentially the same information Chaplain Neely passed on to Lane in his much earlier response to his initial February 24, 2020 Inmate Request Form. *See* ¶ 12, supra.

pains, weight loss, or any other symptom that could be attributed to a nutritiously inadequate diet. *Id.*

22.    Throughout Ramadan 2020, Lane was offered three meals per day at the regularly scheduled mealtimes but elected to fast, during daylight hours, the last twenty-four days of Ramadan. *SUMF, Doc. 40 at ¶¶ 43–44; V. Compl., Doc. 2 at 6.*

23.    In 2021 and 2022, Lane successfully participated in Ramadan. *Mayfield Aff., Doc. 38-1 at 6–1, ¶¶ 46–47.*

### III.  Discussion

In their summary judgment papers, each Defendant argues that, in his individual capacity, he is entitled to qualified immunity because Lane has failed to establish a violation of his First, Eighth, or Fourteenth Amendment rights.

To determine if Defendants are entitled to qualified immunity, the Court must conduct a two-prong inquiry into whether Lane has demonstrated: "(1) a deprivation of a constitutional right, [which was] (2)…clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). While a district court may address those two issues in any order, "it may not deny qualified immunity without answering both questions in the plaintiff's favor." *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citation and internal quotations marks omitted).

For the reasons explained below, Lane has failed to demonstrate a depravation of his First, Eighth, or Fourteenth Amendment rights. Accordingly, Defendants are entitled to summary judgment under the first prong of the qualified analysis and the Court need not decide if Lane's constitutional rights were "clearly established" at the time of the alleged deprivation.

### A. Lane's First Amendment Claim Fails Because The ADC's Ramadan Policies and Procedures Did Not Substantially Burden His Right To Practice His Religion

Under the Free Exercise Clause, prisoners must be provided with a reasonable opportunity to exercise their sincerely held religious beliefs. *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004); *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000). However, because "[r]unning a prison is an inordinately difficult undertaking," prison officials must be given deference in properly overseeing the security, discipline, and general administration of the prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–50; *Turner v. Safley*, 482 U.S. 78, 84–85 (1987).

For Lane to establish that his First Amendment free exercise rights were violated, he must show that the ADC's Ramadan policy substantially burdened his ability to exercise his sincerely held religious belief. *Brown-El v. Harris*, 26 F.3d 68, 69 (8th Cir. 1994). Furthermore, even if Lane meets this initial burden, the ADC's limitation of his First Amendment rights is permissible *if* those limitations are "reasonably related to legitimate penological objectives." *Murphy v. Missouri Dep't*

*of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987)).

Defendants first argue Lane cannot establish that the ADC's Ramadan policy substantially burdened his right to practice his religion. In support of their position, Defendants rely on the holding in *Brown-El v. Harris*, 26 F.3d 68 (8th Cir. 1994).

In that case, Brown-El, a Muslim inmate, claimed that two prison officials violated his First Amendment free exercise rights "by removing him from the list of fasting Muslim inmates given a special meal schedule." *Brown-El*, 26 F.3d at 69. Although Brown-El had successfully received Ramadan meal accommodations for several days, he was returned to the prison's regular meal schedule based on a written policy that any inmate who breaks fast would be removed from the Ramadan list. *Id.* The Court held that Brown-El failed to establish that the prison's Ramadan policy substantially burdened his First Amendment rights. *Id.* at 69–70. To the contrary, the Court noted that the policy explicitly provided Brown-El an avenue to practice Ramadan but, by breaking his fast, "Brown–El simply placed himself outside the group of worshippers accommodated by the [prison's] procedures." *Id.* at 70.

Here, the ADC's policy provided Lane a readily accessible avenue to participate in the Ramadan fast. Defendant Chaplain Neely explicitly warned Lane that, if he did not update his religious affiliation to reflect he was a Muslim, *before the beginning of Ramadan*, he would not receive the nighttime meal

accommodations. The undisputed facts establish that Lane failed to follow the ADC's Ramadan policies and procedures or heed Chaplain Neely's explicit directions on how to receive the Ramadan meal accommodations.

Because the ADC Ramadan policy provided Lane with a reasonable opportunity to participate in Ramadan, he cannot establish that the policy substantially burdened his free exercise rights. Thus, Defendants are entitled qualified immunity on Lane's First Amendment claim.

Alternatively, Defendants did not violate Lane's First Amendment rights because the ADC's policy is reasonably related to legitimate penological concerns. Defendants have provided the sworn declaration of Administrator Mayfield which states that the ADC Ramadan policy is designed to protect the safety and security of Ramadan participants by: (1) allowing guards the know that only the officially listed Muslim prisoners will be taken for evening meals, in groups that do not include any participants on their enemy alert list; and (2) ensuring Muslim inmates are able to participate in Ramadan without fear of offending or drawing ire from inmates of other religious denominations who are restricted from requesting an evening meal accommodation.

Accordingly, because the ADC Ramadan policy does not substantially burden Lane's free exercise rights and is reasonably related to legitimate penological

concerns, Defendants are entitled to qualified immunity on Lane's First Amendment free exercise claim.

### B. Lane's Eighth Amendment Claim Fails Because He Was Provided An Adequate Diet

Lane also argues that, because he continued to fast throughout Ramadan and was not provided two meals after sundown, he experienced "pain and suffering" caused by "mild nutrition" loss. *Doc. 2 at 6.* According to Lane, this constituted cruel and unusual punishment in violation of his Eighth Amendment rights.

The Eighth Amendment requires that inmates be provided nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). However, for Lane to state an actionable claim for relief under the Eighth Amendment, he must come forward with facts demonstrating that Defendants served him a nutritionally inadequate diet that was detrimental to his health. *Id.*

Here, the undisputed facts establish that, during the twenty-four days that Lane fasted without receiving the evening meal accommodations, he was still provided with three meals a day. While Lane *elected not to consume two of those meals*, because they were served during daylight hours, this in no way negates *the fact* that Defendants provided him a nutritionally adequate diet on each of the twenty-four days in question. And, of course, if Lane had followed Chaplain Neely's advice and timely submitted the written form changing his religious affiliation from

13

Buddhist to Muslim, he would have been allowed receive all of the 2020 Ramadan evening meals.

Finally, while it is undisputed that Lane reported many ailments during his Ramadan fast, all of them appear to be *unrelated* to his diet. Furthermore, Lane has made no showing that he suffered any detrimental health effects *as a result of an inadequate diet. See Wishon*, 9778 F.2d at 449 (dismissing prisoner's inadequate diet claim because he had "presented no evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food.").

Because Lane's Eighth Amendment inadequate diet claim fails, as a matter of law, Defendants are entitled to qualified immunity on that claim.

### C. Lane's Fourteenth Amendment Claim Fails Because He Was Not Discriminated Against On the Basis of a Protected Characteristic

In his Complaint, Lane makes a vague allegation that, in being denied the evening meal accommodations during Ramadan, he was "treated different th[a]n others similarly situated." *Doc. 2 at 6.* At the screening stage, the Court liberally construed that allegation as stating an equal protection claim under the Fourteenth Amendment.

Lane can prevail on an equal protection claim under two alternative legal theories. First, Lane can prevail if he demonstrates that: (1) he was treated differently from similarly situated inmates; and (2) the different treatment was based upon either

14

a suspect classification or fundamental right.   *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008); *Weems v. Little Rock Police Dept.,* 453 F.3d 1010, 1016 (8th Cir. 2006). Second, Lane can prevail if he demonstrates that: (1) Defendants *intentionally* treated him differently from similarly situated prisoners; and (2) there was no rational basis for the difference in treatment. *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). Importantly, under both of those equal protection theories, Lane must demonstrate that he was treated differently than "similarly situated" inmates.

While religion is unquestionably a suspect classification, *Patel*, 453 F.3d at 816, Lane has come forward with *no evidence* showing that other "similarly situated" inmates were treated differently, *i.e.,* they were allowed to receive Ramadan accommodations and he was not. Furthermore, the Court can find nothing in the record suggesting that other inmates failed to abide by the two-step ADC procedure to get on the Ramadan list, but were *allowed* to receive the evening meals.

Accordingly, Defendants are entitled to qualified immunity on Lane's Fourteenth Amendment equal protection claim.

### D. Official Capacity Claims

While Lane alleges that he is suing Defendants in their "official capacity,"[7] those claims fail because all of his individual capacity claims against Defendant are without merit. *Johnson v. City of Ferguson, Missouri*, 926 F.3d 504, 506 (8th Cir. 2019) (*en banc*) (citations omitted) ("This circuit has consistently recognized a general rule that, in order for [official] liability to attach, individual liability first must be found on an underlying substantive claim.").

## IV.  Conclusion

Lane has failed to establish a violation of his First, Eighth, or Fourteenth Amendment rights. Accordingly, Defendants are entitled to qualified immunity on all of the claims Lane has asserted against them, and those claims should be dismissed, with prejudice.

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (*Doc. 38*) be GRANTED.

2.    Lane's First, Eighth, and Fourteenth Amendment claims against Defendants Emmer Branch, Gaylon Lay, James Neely, and Arlen Parham be DISMISSED, with prejudice.

---

[7] *See* Lane's Complaint, *Doc. 2 at 4* (indicating that all Defendants are being sued in their "official and personal capacity").

16

3.    Judgment be entered accordingly,[8] and this case, in its entirety, be CLOSED.

DATED this 22nd day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] Lane's claims against the Arkansas Department of Correction were previously dismissed with prejudice. *Doc. 6.*